IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CR-116-D

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GEORGE SPRINGER, | ) | |
| | ) | |
| Defendant. | ) | |

On January 12, 2021, George Springer ("Springer") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed records in support [D.E. 62]. On January 31, 2021, Springer's counsel filed a second motion for compassionate release and a memorandum and records in support [D.E. 65, 66]. On February 16, 2021, the government responded in opposition [D.E. 68]. On February 17, 2021, Springer replied [D.E. 69]. As explained below, the court denies Springer's motion for compassionate release and dismisses Springer's request for home confinement.

I.

On October 22, 2007, pursuant to a written plea agreement, Springer pleaded guilty to two counts of armed bank robbery (E.D.N.C. count two and E.D. Va. count two), use, carrying, or possession of a firearm during and in relation to a crime of violence and aiding and abetting (E.D.N.C. count three), and felon in possession of firearm and ammunition (E.D. Va. count four). See [D.E. 38, 40]; United States v. Springer, No. 5:07-CR-306-D-1 (E.D.N.C. Oct. 22, 2007) [D.E.

4, 6].[1] On February 12, 2008, the court held Springer's sentencing hearing. See [D.E. 44]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Springer's total offense level to be 31, his criminal history category to be VI, and calculated Springer's advisory guideline range to be 272 to 319 months' imprisonment. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Springer to 216 months' imprisonment on E.D.N.C. count two and E.D. Va. count two, to run concurrently, 84 months' imprisonment on E.D.N.C. count three, to run consecutively, and 120 months' imprisonment on E.D. Va. count four, to run concurrently, for a total of 300 months' imprisonment. See [D.E. 45]. Springer did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is

---

[1] On October 11, 2007, the Eastern District of Virginia transferred case number 5:07-CR-306 to the Eastern District of North Carolina. See Springer, No. 5:07-CR-306-D-1 (E.D.N.C. Oct. 11, 2007) [D.E. 1]. In the Eastern District of Virginia, the government charged Springer with one count of armed bank robbery (E.D. Va. count two) and felon in possession of firearm and ammunition (E.D. Va. count four). See Springer, No. 5:07-CR-306-D-1 (E.D.N.C. Oct. 22, 2007) [D.E. 4, 6].

2

not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment,

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

or

      (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Springer contends that he exhausted his administrative remedies. See [D.E. 65] 5; [D.E. 65-1]. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[3] Accordingly, the court addresses Springer's claim on the merits.

Springer seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Springer cites the COVID-19 pandemic and his health conditions, including hypertension, vein thrombosis, unspecified respiratory disorder, tachycardia, chronic hepatitis C, COPD, and a

---

[3] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

pulmonary embolism. See [D.E. 62] 1–2; [D.E. 65] 1, 5–11; [D.E. 66-2]. Springer also cites the conditions at FCI Williamsburg, his rehabilitation efforts, that he has served over 166 months of his federal sentence, and his release plan. See [D.E. 62] 1–3; [D.E. 65] 1–2, 13–16; [D.E. 66-4]; [D.E. 69] 1–4.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Springer states that he suffers from hypertension, vein thrombosis, unspecified respiratory disorder, tachycardia, chronic hepatitis C, COPD, and a pulmonary embolism, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Springer serves his sentence. Accordingly, reducing Springer's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, the conditions at FCI Williamsburg, and Springer's health conditions are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, after considering the entire record, the section 3553(a) factors counsel against reducing Springer's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Springer is 53 years old and engaged in repeated, violent criminal behavior in January 2007. See PSR ¶¶ 12–15. Springer and an accomplice, Harvey Blackwell ("Blackwell"), committed two

6

armed bank robberies, one in Chester, Virginia, and the other in Raleigh, North Carolina. See id. During the armed bank robberies, Springer pointed his handgun at bank tellers and demanded money. See id. During the Raleigh armed robbery, Springer threatened to kill one of the tellers if she placed a dye pack with the money and, as he fled the bank, he told the tellers and customers that he had placed a bomb in the bank's door. See id. ¶ 15. Springer and Blackwell fled the Raleigh bank robbery in a stolen car. See id. When law enforcement officials arrested Springer and Blackwell, they discovered that Springer had threatened to kill Blackwell and Blackwell's wife if they did not aid Springer in committing the robberies. See id. ¶ 16. Springer's robberies netted $33,796, and he possessed a 9mm handgun during the robberies. See id. ¶¶ 13, 15.

Springer's horrific conduct in January 2017 is no surprise. Springer is a violent recidivist with convictions for theft (two counts), burglary, break-in with intent to commit a felony, common law assault, deadly-weapon concealed, unlawful taking of a motor vehicle (two counts), and attempt to drive to elude police. See id. ¶¶ 20–25. Springer also has performed poorly on supervision. See id. ¶¶ 20–21. Although Springer has taken positive steps while incarcerated on his federal sentence, he sustained one infraction for insolence. See [D.E. 62] 3; [D.E. 65] 2, 13–16; [D.E. 66-4]; [D.E. 69] 1–4.

The court has considered Springer's exposure to COVID-19, the conditions at FCI Williamsburg, his health conditions, that he has served over 166 months of his federal sentence, his conduct while incarcerated, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Springer, the section 3553(a) factors, Springer's arguments, the government's persuasive response, and the need to punish Springer for his repeated, violent criminal behavior, to incapacitate Springer, to promote respect for

7

the law, to deter others, and to protect society, the court declines to grant Springer's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished). The court categorically rejects Springer's argument that the difference between his sentence and Blackwell's sentence was unwarranted. Cf. [D.E. 69] 6–7. Blackwell cooperated and explained that he committed the robberies with Springer because Springer had threatened to kill Blackwell and Blackwell's wife if Blackwell did not assist Springer with the robberies. See PSR ¶ 16.

As for Springer's request for home confinement, Springer seeks relief under the CARES Act. See [D.E. 65] 2–3. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Springer's request for home confinement.

II.

In sum, the court DENIES Springer's motions for compassionate release [D.E. 62, 65] and DISMISSES Springer's request for home confinement.

SO ORDERED. This 26 day of March 2021.

JAMES C. DEVER III
United States District Judge